COPY

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS (168593)
DAVID C. WALTON (167268)
BRIAN O. O'MARA (229737)
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@csgrr.com
davew@csgrr.com
bomara@csgrr.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

FILED

2009 MAY 22 AM 11:56

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY ______

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JAMES MITCHELL, Individually and on Behalf of All Others Similarly Situated,<br>Plaintiff,<br>vs.<br>BIDZ.COM, INC., DAVID ZINBERG, LEON KUPERMAN, LAWRENCE Y. KONG and CLAUDIA Y. LIU,<br>Defendants. | VIA FAX<br>CV09-03671 CBM (CWx)<br>CLASS ACTION<br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br>DEMAND FOR JURY TRIAL |

## JURISDICTION AND VENUE

1. Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 ("1934 Act"). The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

2. Venue is proper in this District pursuant to §27 of the 1934 Act. Many of the false and misleading statements were made in or issued from this District.

3. Bidz.com, Inc.'s principal executive offices are located at 3562 Eastham Drive, Culver City, California.

## INTRODUCTION

4. This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Bidz.com, Inc. ("Bidz") between August 13, 2007 and November 27, 2007, inclusive (the "Class Period"), against Bidz and certain of its officers and/or directors for violations of the 1934 Act.

5. Bidz is an online retailer of jewelry, featuring a live auction format. The Company offers its products through a continuous live format. The majority of its auctions are short-term, often lasting less than one hour. Its product inventory includes gold, platinum and silver jewelry set with diamonds, rubies, emeralds, sapphires, and other precious and semi-precious stones, and watches. In addition to its own products, the Company has several independent merchants that sell art, collectibles and gift items.

6. During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. Specifically, defendants failed to disclose that Bidz was operating with material weaknesses and undisclosed significant problems that affected the Company's entire business model. As a result of defendants' false and misleading statements, Bidz stock traded at artificially inflated prices during the Class Period, reaching a high of $19.94 per share on November 23, 2007.

7. On November 26, 2007, Citron Research (formerly known as StockLemon.com), issued a negative report on Bidz's stock, exposing many "red flags" and disclosing that Bidz's auctions were controlled by Bidz and that the Company seemed to generate a lot of inventory instead of generating cash. The report stated in part:

> Bidz.com is an online auction provider of off price jewelry and second tier accessories. What makes their model unique is that everything is sold via auction. Yet, the auctions are not third party auctions as facilitated by Ebay, rather they are auctions that are controlled by the company. In this report, Citron will expose what we believe to be many red flags at BIDZ. Citron will make a few comparisons to previous reports written on other companies as the issues at BIDZ seem to closely mirror issues we have discussed in the past.
>
> * * *
>
> One common complaint that we see online is "shill bidding". On Wednesday, November 28, Citron will expose what we believe to be is some extremely questionable bids and bidding practices that occur on BIDZ.com. This part 2 will have much supporting documentation that the investing public should be made aware of. Unlike eBay and other well-known auction sites, you cannot even click to contact or check the track record of bidders. And since the company is selling its own goods, rather than conducting auctions for independent sellers, the company is responsible for the legality of all aspects of the conduct of its auctions.
>
> **Conclusion**
>
> It is the opinion of Citron Research that Bidz.com's business model is not sustainable. The large related party transactions, and the background of the individuals involved certainly provide plenty of reason for doubt. It is the opinion of Citron that the recent surge in stock

> price is completely unwarranted and the company is going to have to start generating real cash under a verifiable and transparent inventory valuation disclipline before shareholders can take its earnings seriously. **Before buying into this "growth" story when the company has less than .70c per share in net asset value, investors would be advised to look carefully at what this company is really doing on its auction website.** Stay tuned for part 2 in order to get more clarity of the business model of BIDZ.

8. On this news, Bidz's stock collapsed over $4.67 per share to close at $11.89 per share on November 27, 2007, a one-day decline of more than 28%.

9. On November 27, 2007, Bidz hosted a conference call to rebut the Citron Research article, but also disclosed new information that harmed the Company's stock price. As *Barron's* reported:

> Speaking on a conference call with investors this afternoon to respond to a negative report yesterday from Citron Research, Bidz.com (BIDZ) CEO David Zinberg said the company learned only yesterday that Saied Aframian, manager of L.A. Jewelery, a major jewelry supplier to Bidz and a larger shareholder, had been convicted in the 1980s for fencing stolen jewelry.

10. As a result of defendants' false statements, Bidz's stock price traded at inflated levels during the Class Period. On this news, Bidz's stock dropped an additional $1.79 per share, a one-day decline of 15%, on volume of more than 11.6 million shares as artificial inflation came out of the stock price.

11. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) Bidz did not have controls in place to prevent "shill bidding" such that its central business was subject to abuse; and

(b) Bidz used unreliable or false appraisal prices on its merchandise which misled customers and would ultimately cause its business to fail.

## PARTIES

12. Plaintiff James Mitchell purchased Bidz common stock as described in the attached certification and was damaged thereby.

13. Defendant Bidz is an online retailer of jewelry, featuring a live auction format. The Company offers its products through a continuous live format. The majority of its auctions are short-term, often lasting less than one hour. Its product inventory includes gold, platinum and silver jewelry set with diamonds, rubies, emeralds, sapphires, and other precious and semi-precious stones, and watches. In addition to its own products, the Company has several independent merchants that sell art, collectibles and gift items. The Company offers to sell products through its Website at www.bidz.com. Bidz is headquartered in Culver City, California.

14. Defendant David Zinberg ("Zinberg") founded Bidz in November 1998. Defendant Zinberg is, and at all relevant times was, Chairman of the Board, Chief Executive Officer ("CEO") and a director of Bidz. During the Class Period, while Bidz's stock price was inflated due to defendants' false statements, Zinberg sold 90,000 shares of his Bidz stock for proceeds of $901,364.

15. Defendant Leon Kuperman ("Kuperman") is, and at all relevant times was, President and Chief Technology Officer of Bidz.

16. Defendant Lawrence Y. Kong ("Kong") is, and at all relevant times was, Chief Financial Officer ("CFO") and a director of Bidz.

17. Defendant Claudia Y. Liu ("Liu") is, and at all relevant times was, Chief Operating Officer of Bidz. During the Class Period, while Bidz's stock price was inflated due to defendants' false statements, Liu sold 55,000 shares of her Bidz stock for proceeds of $941,475.

18. Defendants Zinberg, Kuperman, Kong and Liu (the "Individual Defendants"), because of their positions with the Company, possessed the power and

authority to control the contents of Bidz's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

19. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Bidz. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Bidz common stock was a success, as it: (i) deceived the investing public regarding Bidz's prospects and business; (ii) artificially inflated the price of Bidz's common stock; (iii) allowed defendants Zinberg and Liu to sell over $1.8 million worth of their Bidz common stock at artificially inflated prices; and (iv) caused plaintiff and other members of the Class to purchase Bidz common stock at inflated prices.

## BACKGROUND

20. Bidz is an online retailer of jewelry, featuring a live auction format. The Company offers its products through a continuous live format. The majority of its auctions are short-term, often lasting less than one hour. Its product inventory includes gold, platinum and silver jewelry set with diamonds, rubies, emeralds, sapphires, and other precious and semi-precious stones, and watches. In addition to its own products, the Company has several independent merchants that sell art, collectibles and gift items. The Company offers to sell products through its Website at www.bidz.com.

The Company offers products with a 15-day return policy on all merchandise. The Company's Website also provides a dynamic display of auto-refreshing screens, enabling its customers to follow its in-progress auctions in real-time. It offers its products through a continuous live format, featuring a $1 minimum opening bid, and a 15-second auction extension period that allows its auctions to continue until all bids are received. The Company's Website offers detailed product information, including photographs of its merchandise and customer support via phone, live-help and e-mail around the clock. It purchases jewelry inventory directly from manufacturers and liquidators. It also closely monitors its sales trends to assess consumer demand for certain jewelry styles and categories and purchases such non-closeout inventory directly from manufacturers. The Company competes with eBay, uBid, Overstock, Blue Nile, Zales, Finlay Fine Jewelry, Reed's Jewelers, Wal-Mart, Target, J. C. Penney, Costco, QVC and Home Shopping Network.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Bidz common stock during the Class Period (the "Class"). Excluded from the Class are defendants.

22. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Bidz has more than 23 million shares of stock outstanding, owned by hundreds if not thousands of persons.

23. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) whether the 1934 Act was violated by defendants;

(b) whether defendants omitted and/or misrepresented material facts;

(c) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e) whether the price of Bidz common stock was artificially inflated; and

(f) the extent of damage sustained by Class members and the appropriate measure of damages.

24. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

25. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

27. On August 13, 2007, Bidz reported its second quarter 2007 financial results, in a release which stated in part:

> Bidz.com, Inc., a leading online auctioneer of jewelry, today reported financial results for the second quarter and six months ended June 30, 2007.
>
> Net revenue for the second quarter of 2007 was $39.1 million, a 20.6% increase compared with $32.4 million reported for the second quarter of 2006. This increase was due primarily to the growth in demand for the Company's jewelry products and the increase in the average order value, which grew by 28.6% year-over-year to $171.

During the second quarter, the Company had an average of nearly 2,700 orders per day as compared to an average of 2,800 orders per day in the prior year's quarter, and the acquisition cost per new buyer declined to $38 versus $49 in the second quarter of 2006.

| | Three months ended June 30, | | |
|---|---|---|---|
| | 2007 | 2006 | Change |
| Average order value | $171 | $133 | 28.6% |
| Average orders per day | $2,678 | $2,832 | -5.4% |
| Average items sold per day | $8,678 | $7,730 | 12.3% |
| Acquisition cost per new buyer | $38 | $49 | -22.4% |
| Number of new buyers | $53,673 | 57,520 | -6.8% |

The Company's pre-tax income for the second quarter of 2007 was $3.7 million, above the Company's original guidance of $2.8-$3.3 million, and compared to $151,000 in the prior period in 2006. Net income for the second quarter of 2007 increased to $2.9 million, or $0.12 per fully diluted share on 24.1 million weighted average shares outstanding, compared to net income of $147,000, or $0.01 per fully diluted share on 23.8 million weighted average shares outstanding in the same period of 2006. The increase in net income was due primarily to the increase in net revenue, higher gross profit margins and non-recurring costs related to the Company's withdrawn initial public offering of $1.2 million in the 2006 second quarter.

"The second quarter was an exciting one for Bidz.com as our stock began trading on the Nasdaq in June, and we are proud to be reporting strong sales and earnings growth to our shareholders," said David Zinberg, President and Chief Executive Officer of Bidz.com. "Traffic to our site continues to grow driving an increasing number of items sold and importantly, the average order value in the second quarter increased approximately 29% year-over-year."

Mr. Zinberg continued, "We are very pleased with the momentum we are seeing and particularly the leverage and scalability of our model which resulted in a significant increase in our bottom-line. We are keenly focused on continuing to achieve strong growth and profitability and further leveraging our model to deliver earnings, cash flow and shareholder returns."

In the second quarter, gross profit increased 41.4% to $10.9 million from $7.7 million in the second quarter of 2006. Gross margin in the second quarter of 2007 was 27.8%, compared with 23.7% in the same period of 2006. The gross margin improvement versus a year ago is attributable to the higher prices from auction sales and not continuing the Company's free shipping promotion which ended at the end of January 2007.

Operating expenses in the second quarter 2007 decreased 6.1% year-over-year to $7.1 million. Net operating income for the second quarter of 2007 was $3.8 million or 9.6% of sales compared to $110,000 or 0.3% of sales in the second quarter of 2006. Included in the prior year period are $1.2 million of public offering costs related to the Company's withdrawn initial public offering.

For the six months ended June 30, 2007, revenues were $83.8 million, a 24.9% increase compared with $61.7 million reported for the six months ended 2006. Gross profit increased 30.4% to $22.0 million from $16.9 million in the six months ended June 30, 2006. Gross margin for the first half of 2007 was 26.2% versus 25.1% in the first half of 2006. Operating expense leverage improved for the first six months of 2007 as operating expenses were $14.6 million, or 17.4% of sales. In the same period in 2006, operating expenses were $13.4 million, or 19.9% of sales. Income from operations in the first six months of 2007 was $7.4

million or 8.8% of sales as compared to $3.5 million or 5.2% of sales in the same period a year ago.

Net income for the six months ended June 30, 2007 was $6.3 million, or $0.27 per fully diluted share on 23.9 million weighted average shares outstanding, compared to $3.4 million, or $0.14 per fully diluted share on 23.8 million weighted average shares outstanding, in the same period of 2006.

As of June 30, 2007, the Company had $1.8 million in cash and no long-term debt. The Company's outstanding balance on its revolving line of credit at June 30, 2007 was $316,000 of the available $15 million. As of August 10, 2007, the Company has no outstanding balance on its revolving line of credit.

Business Outlook

The Company expects revenues for the third quarter of 2007 to be in the range of $37-39 million, and expects income before income tax of approximately $3.0-3.2 million. For the full year of 2007, the Company confirms its revenue guidance of $170-$180 million, and anticipates gross margin of approximately 25-26%. The Company expects income before income tax for 2007 of $14-$15 million. The Company expects its effective tax rate for the full year of 2007 to be approximately 11%, and expects to end the year with approximately 24.5 million shares outstanding.

28. The Company's disclosures concealed the bid manipulations occurring at Bidz and by October 2007, the stock was trading near $15 per share, up from less than $10 per share pre-Class Period.

29. On November 12, 2007, Bidz reported is third quarter 2007 financial results, in a release which stated in part:

Bidz.com, Inc., a leading online auctioneer of jewelry, today reported strong financial results for the third quarter and nine months ended September 30, 2007.

Net revenue for the third quarter of 2007 was $40.1 million, a 48% increase compared with $27.1 million reported for the third quarter of 2006. This increase was mainly due to the growth in demand for its jewelry products and the increase in average sales amount per order. During the third quarter, the Company lowered its acquisition cost per new buyer and increased the number of new buyers, orders per day, and significantly increased its average order value.

| | Three months ended September 30, 2007 | | |
|---|---|---|---|
| | 2007 | 2006 | Change |
| Average order value | $ 173 | $ 124 | 39.5% |
| Average orders per day | 2,699 | 2,587 | 4.3% |
| Average items sold per day | 8,814 | 7,293 | 20.9% |
| Acquisition cost per new buyer | $ 43 | $ 51 | -15.7% |
| Number of new buyers | 55,423 | 49,412 | 12.2% |

The Company's pre-tax income for the third quarter of 2007 was $5.2 million, above the Company's original guidance of $3.0-$3.2 million, and compared to $1.0 million in the prior period in 2006. Net income for the third quarter of 2007 increased to $3.6 million, or $0.14 per fully diluted share on 26.3 million weighted average shares outstanding, compared to net income of $997,000, or $0.04 per fully diluted share on 23.8 million weighted average shares outstanding in the same period of 2006. The increase in net income was due primarily to higher gross profit margins on increased revenues.

"We are very pleased to announce such strong results for the third quarter," said, David Zinberg, President and Chief Executive Officer of Bidz.com. "Our unique value proposition and continued focus on

executing our business and achieving results has driven this performance. Our new initiatives have significantly increased sales and resulted in record gross margins for the quarter."

Mr. Zinberg continued, "Looking forward, we continue to innovate to further drive sales growth and profitability. We are optimistic about the upcoming holiday period and as a result have increased our guidance for the year. We look forward to continuing to diligently execute our strategic plan in 2008 and beyond."

In the third quarter, gross profit increased 90.6% to $12.7 million from $6.7 million in the third quarter of 2006. Gross margin in the third quarter of 2007 was 31.7%, compared with 24.6% in the same period of 2006. Gross margin benefited from the amortized co-op marketing contributions that reduced our cost of sales by $833,000 or 2.1% of net revenue. The co-op marketing contributions are amortized as a reduction to cost of sales over the estimated inventory turnover period. We expect gross margins for the fourth quarter to continue to improve over the corresponding prior year period as a result of continued receipt of co-op marketing dollars and continued elimination of any major shipping promotions.

Operating expenses in the third quarter 2007 increased year-over-year to $7.5 million from $5.7 million. Net operating income for the third quarter of 2007 was $5.2 million compared to $1.0 million in the third quarter of 2006.

For the nine months ended September 30, 2007, revenues were $123.9 million, a 31.5% increase compared with $94.2 million reported for the nine months ended 2006. Gross profit increased 47.5% to $34.7 million from $23.5 million in the nine months ended September 30, 2006. Operating expense leverage improved for the first nine months of

2007 as operating expenses were $22.1 million, or 17.9% of sales, compared to $19.0 million, or 20.2% of sales in the same period a year ago. Income from operations in the first nine months of 2007 was $12.6 million, or 10.1% of sales, as compared to $4.5 million, or 4.8% of sales in the same period a year ago.

The net income for the nine months ended September 30, 2007 was $9.9 million, or $0.40 per fully diluted share on 25.0 million weighted average shares outstanding, compared to $4.4 million, or $0.19 per fully diluted share on 23.8 million weighted average shares outstanding, in the same period of 2006.

As of September 30, 2007, the Company had $1.1 million in cash. The Company has working capital of $18.7 million and no long-term debt. The Company has no outstanding balance on its $15 million revolving line of credit.

Business Outlook

The Company expects revenues for the fourth quarter of 2007 to be in the range of $56-$58 million, and expects pre-tax income of approximately $5.6-$6.0 million. For the full year of 2007, the Company has increased its revenue guidance to $180-$182 million and has increased its expected gross margin guidance to approximately 27-28%. The Company now expects pre-tax income for 2007 of $18.0-$18.5 million. The Company expects its effective tax rate for the full year of 2007 to be approximately 20.2%, and expects to end the year with approximately 26.4 million fully diluted shares outstanding.

The Company is introducing new guidance for 2008 and expects revenues to be in the range of $225-$230 million, pre-tax income of approximately $23.5-$25.5 million and gross margin of approximately 27-28%. The Company expects its effective tax rate for the full year of

2008 to be approximately 40%, and expects to end the year with approximately 30.0 million fully diluted shares outstanding. The Company expects fully taxed 2008 GAAP EPS of $0.47-$0.51.

30. On Friday, November 23, 2007, Bidz's stock closed at $19.94 per share.

31. On November 26, 2007, Citron Research (formerly known as StockLemon.com), issued a negative report on Bidz's stock, exposing many "red flags," disclosing that Bidz's auctions were controlled by Bidz and that the Company seemed to generate a lot of inventory instead of generating cash. The report stated in part:

> Bidz.com is an online auction provider of off price jewelry and second tier accessories. What makes their model unique is that everything is sold via auction. Yet, the auctions are not third party auctions as facilitated by Ebay, rather they are auctions that are controlled by the company. In this report, Citron will expose what we believe to be many red flags at BIDZ. Citron will make a few comparisons to previous reports written on other companies as the issues at BIDZ seem to closely mirror issues we have discussed in the past.
>
> * * *
>
> One common complaint that we see online is "shill bidding". On Wednesday, November 28, Citron will expose what we believe to be is some extremely questionable bids and bidding practices that occur on BIDZ.com. This part 2 will have much supporting documentation that the investing public should be made aware of. Unlike eBay and other well-known auction sites, you cannot even click to contact or check the track record of bidders. And since the company is selling its own goods, rather than conducting auctions for independent sellers, the company is responsible for the legality of all aspects of the conduct of its auctions.
>
> **Conclusion**

> It is the opinion of Citron Research that Bidz.com's business model is not sustainable. The large related party transactions, and the background of the individuals involved certainly provide plenty of reason for doubt. It is the opinion of Citron that the recent surge in stock price is completely unwarranted and the company is going to have to start generating real cash under a verifiable and transparent inventory valuation disclipline before shareholders can take its earnings seriously. **Before buying into this "growth" story when the company has less than .70c per share in net asset value, investors would be advised to look carefully at what this company is really doing on its auction website.** Stay tuned for part 2 in order to get more clarity of the business model of BIDZ.

32. On this news, Bidz's stock collapsed over $4.67 per share from $16.56 per share on November 26, 2007, to close at $11.89 per share on November 27, 2007, a one-day decline of more than 28%, and a two-day decline of 40%.

33. On November 27, 2007, Bidz hosted a conference call to rebut the Citron Research article, but also disclosed new information that harmed the Company's stock price. As *Barron's* reported:

> Speaking on a conference call with investors this afternoon to respond to a negative report yesterday from Citron Research, Bidz.com (BIDZ) CEO David Zinberg said the company learned only yesterday that Saied Aframian, manager of L.A. Jewelery, a major jewelry supplier to Bidz and a larger shareholder, had been convicted in the 1980s for fencing stolen jewelry.
>
> That was one of the number of key bullet points from the call:
>
> * * *
>
> - Zinberg says Citron's report was "untruthful," and that the company is considering legal action against Citron.

- Zinberg asserted that comparisons between the cash and inventory positions of Bidz.com and Blue Nile (NILE) and Overstock (OSTK) are not valid since the companies do not have the same business models.

* * *

- On the relationship with Aframian, he says that he has never had any reason to question his integrity, but that the company is not re-evaluating his relationship with him. He says the company has cuts its reliance on L.A. Jewelry to 12% of revenue from 35% a year ago. He also says the company could easily replace the goods they get from L.A. Jewelery from other wholesalers. He added that Aframian is a manager, but not an owner, of L.A. Jewelery. He says that company checks out its suppliers with the Jewelery Board of Trade. He also said that he has know Aframian for 7 years.

* * *

- On possible shill bidding on the site, he says that shill bidding is against company policy.

* * *

- Zinberg says about 25% of its jewelery is sold below cost.
- On the company's apparent sale of televisions and other goods at very high prices – very far above their actual value – Zinberg says the company gets zero revenue from electronics sales. He says they are sold by certified merchants, who are allowed to sell goods on the site for free. There are about 40 certified merchants. Zinberg had

no explanation for why people would bid more than $11,000 for a TV worth less than a tenth of that.

- Zinberg insisted there was nothing strange about the many bids now on the site for a large yellow diamond ring listed on the company's home page with multiple bids worth $500,000. He says the company has no way of knowing if the bidders can actually pay for such a large purchase.
- Zinberg says about 20% of winning auction bids do not result in transactions; but he says they only book revenue on shipment of goods once cash is received.
- Nice…some wag on the Q&A portion of the call identified himself as Sherman McCoy, which is the name of the central character in Bonfire of the Vanities.
- He had no explanation for why one bidder bought 14 television at above-market prices.

If the call was intended to boost confidence in the company, it did not work, BIDZ, which fell $4.67 in the regular session, after dropping $3.38 yesterday, is off another $2.34, or 19.7%, to $9.55, in after hours trading.

34. As a result of defendants' false statements, Bidz's stock price traded at inflated levels during the Class Period. On this news, Bidz's stock dropped an additional $1.80 per share, a one-day decline of 15%, on volume of more than 11.6 million shares. This drop removed inflation from Bidz's stock price, causing real economic loss to investors who had purchased the stock during the Class Period.

35. On November 28, 2007, Citron Research issued additional comments on Bidz:

Citron Research believes the bidding process at Bidz.com leaves a lot of unanswered questions. While Citron does find the Bidz site

entertaining with a unique interface, they have much to prove before it can be anointed with the big earnings multiples associated with proven business models. This report will outline some of the obvious bidding irregularities that we have observed on the Bidz website.

This report will not be a refutation to the conference call and will not address any new issues.

Let us offer one important correction. In the initial report we stated that CEO Zinberg pays himself 30,000 shares per month. This was not correct. He has been selling 30,000 shares per month from his own holdings. Mr. Zinberg stated during yesterday's conference call that he has reduced that number to 10,000 shares per month; as of today, there has been no public filing of this change yet.

One common complaint that Citron observed in customer postings was shill bidding. This led us to do our own homework. Citron focuses on presenting public domain information. Therefore, when we suggested shill bidding, the investing public ran with the ball and found the same problems on the Bidz website that were found by Citron. As evident in yesterday's conference call investors have already seen these auction items:

$6,000 flashlight/TV combo

http://www.bidz.com/ht/prod?lotID=20686373&hist=1

$11,000 Television

http://www.bidz.com/ht/prod?lotID=21407209&hist=1

The problem is still ongoing as we see in the live auction for a television with an MSRP of $1,499 yet the current bid on the television as of publication is $2,776.

http://www.bidz.com/ht/prod?lotID=21686383&live=1

In an informal study, Citron offers the linked table, which outlines not only the obvious irregular bidding above, but also a pattern in the auction of over 30 TV's over more than 3 months. Most of these TV's are bid on hundreds of times by the same three bidders.

* * *

The hundreds of unique bidders over $500,000 for the big yellow diamond ring on BIDZ homepage has now been the topic of much discussion and there is no need to restate those questions. Citron notes that BIDZ itself stated in the conference call that it does not know whether bidders are bona fide until after an auction closes. Therefore, Citron cannot prove that the bidding on any jewelry is fake either. Jewelry is an item that thwarts direct comparison pricing, especially on the internet.

The question that investors are left with is: Are the patterns of bidding on the televisions any indication of patterns of bidding on jewelry? Do the hundreds of repetitive bids on the TV's (often by the same bidder on separate auctions at nearly the same second) represent flying fingers of a rogue actor, or a feature of the auction software that only company insiders know about?

Bidz.com is in need of a system that allows for more transparency of the Bidz and the integrity that comes from unedited consumer feedback within their own site.

36. Subsequently, on November 28, 2007, Bidz issued a press release entitled "Bidz.com to Investigate and Report Recent Trading Activity to Regulators," which stated in part:

Bidz.com, a leading online auctioneer of jewelry, announced today that it has directed legal counsel to investigate possible wrongdoing by editor Andrew Left of Citron Research, who published a derogatory profile on

Bidz.com on Citron's website, and others in connection with recent trading in the Company's securities. The Company is concerned that recent selling activity in the Company's common stock may violate the federal securities laws. In particular the Company is concerned that this activity may not be in compliance with U.S. Securities and Exchange Commission (SEC) requirements governing short-sales, and the recent rule amendments enacted by the SEC to, among other things, curb potentially abusive "naked" short selling. The Company has reported this activity to both NASDAQ and the SEC.

In an article published by the AP yesterday, Mr. Left reportedly stated that he shorts Bidz' shares, implying that he stands to profit from a drop in the stock price. Following the publication of Mr. Left's report, the volume of trading as reported by The NASDAQ Stock Market increased dramatically. Since Monday, November 26, when the report was published reported volume has been over 30,717,474 shares. As of November 23, 2007, the total number of shares of basic common stock outstanding was 24,211,178 of which 8,061,717 shares are registered, freely tradable or otherwise known as "float."

A short sale is generally the sale of a stock the seller does not own (or that the seller will borrow for delivery). If the price of the stock drops, short sellers buy the stock at the lower price and make a profit. If the price of the stock rises, short sellers will incur a loss. Typically, when a seller sells short, the seller's brokerage firm loans the stock. The stock borrowed comes from either the firm's own inventory, the margin account of other brokerage firm clients, or another lender.

An abusive "naked" short sale generally refers to selling short without having stock available for delivery and intentionally failing to deliver stock within the standard three-day settlement cycle. As a result,

the seller fails to deliver securities to the buyer when delivery is due (known as a "failure to deliver" or "fail").

37. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a) Bidz did not have controls in place to prevent "shill bidding" such that its central business was subject to abuse; and

(b) Bidz used unreliable or false appraisal prices on its merchandise which misled customers and would ultimately cause its business to fail.

## LOSS CAUSATION/ECONOMIC LOSS

38. By misrepresenting the central component of Bidz business – the integrity of its bidding process – the defendants presented a misleading picture of Bidz's business and prospects. Thus, instead of truthfully disclosing during the Class Period that Bidz's bidding included shill bidding, Bidz falsely reported its results.

39. These claims caused and maintained the artificial inflation in Bidz's stock price throughout the Class Period and until the truth was revealed to the market.

40. On November 26, 2007, Citron publicly disclosed that Bidz's bidding process was impaired, causing its stock to collapse from $19.94 per share on November 23, 2007 to $11.89 per share on November 27, 2007.

41. As a direct result of the disclosures regarding the truth about Bidz's overstatement of income and its actual business prospects going forward, Bidz's stock price fell more than 40%, falling from $19.94 per share on November 23, 2007 (a Friday) to $11.89 per share on November 27, 2007 – a two-day drop of more than $8.05 per share. This drop removed the inflation from Bidz's stock price, causing real economic loss to investors who had purchased the stock during the Class Period.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5 Against All Defendants

42. Plaintiff incorporates ¶¶1-41 by reference.

43. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) employed devices, schemes and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Bidz common stock during the Class Period.

45. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Bidz common stock. Plaintiff and the Class would not have purchased Bidz common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

**COUNT II**

**For Violation of §20(a) of the 1934 Act Against All Defendants**

46. Plaintiff incorporates ¶¶1-45 by reference.

47. The Individual Defendants acted as controlling persons of Bidz within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of Bidz stock, the Individual Defendants had the power and authority to cause Bidz to engage in the wrongful conduct complained of herein. Bidz controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B. Awarding plaintiff and the members of the Class damages, including interest;

C. Awarding plaintiff reasonable costs and attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: May 22, 2009

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
BRIAN O. O'MARA

DAVID C. WALTON

655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: 770/392-0090
770/392-0029 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
682 Grant Street
Denver, CO 80203-3507
Telephone: 303/861-1764
303/395-0393 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Bidz.com.doc

## CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4. Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| BIDZ | 11/05/2007 | 135 | $14.50/share |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| BIDZ | 1/14/2009 | 135 | $3.08 /share |

5. During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 day of May, 2009 in Atlanta (City), Georgia (State).

(Signature) X [signature]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES MITCHELL, Individually and on Behalf of All Others Similarly Situated,<br>PLAINTIFF(S)<br>v.<br>BIDZ.COM, INC., DAVID ZINBERG, LEON KUPERMAN, LAWRENCE Y. KONG and CLAUDIA Y. LIU,<br>DEFENDANT(S). | CASE NUMBER<br>CV09-03671 CBM (CWx)<br><br>**SUMMONS** |

TO: DEFENDANT(S): ______________________

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, David C. Walton, whose address is Coughlin Stoia, et al., 655 West Broadway, Suite 1900, San Diego, CA 92101. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: MAY 22 2009

By: LAREE HORN
Deputy Clerk

Seal of the Court

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

**CV09- 3671 CBM (CWx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| JAMES MITCHELL, Individually and on Behalf of All Others Similarly Situated | BIDZ.COM, INC., DAVID ZINBERG, LEON KUPERMAN, LAWRENCE Y. KONG and CLAUDIA Y. LIU |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>David C. Walton Coughlin Stoia Geller Rudman & Robbins LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101 619/231-1058 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Complaint for Violation of the Federal Securities Laws 15 U.S.C. §§78j(b) 78t(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus-Alien Detainee
- ☐ 465 Other Immigration Actions

**TORTS**

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/ Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/ PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: ________________

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.



CV09-03671

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 09-cv-03216-CBM(E)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Atlanta, Georgia |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** May 22, 2009

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |